UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KEVIN DION HARVEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:04-CV-1125-G |
| DOUGLAS DRETKE, Director, Texas | ) | |
| Department of Criminal Justice, | ) | |
| Correctional Institutions Division, | ) | |
| | ) | |
| Respondent. | ) | |

MEMORANDUM OPINION AND ORDER

Before the court is a petition for habeas corpus relief brought by a state inmate,

Kevin Dion Harvey ("Harvey"), pursuant to 28 U.S.C. § 2254.  For the reasons set

forth below, Harvey's petition is denied.

I.  BACKGROUND

The facts of the offense are set forth in the opinion of the state court of

appeals:

> [Harvey] testified that, on February 11, 1999, he was a
> passenger in his red Jeep driven by "Vic."  Vic pulled the

car over, and [Harvey] saw Michael Jones, the decedant, standing outside and staring into the vehicle. Jones had his right hand behind his back, and the other passengers in the vehicle said Jones had a gun. [Harvey] rolled his window down and took a gun from the middle console and placed the gun under his leg. Jones walked toward [Harvey] and pointed a gun at him. Vic began driving in reverse, and [Harvey] ducked down and fired three or four shots in Jones' direction. [Harvey] thought that he heard gunshots from Jones. The vehicle hit a telephone pole, and [Harvey] saw Jones fall before the vehicle drove away. On cross-examination, [Harvey] testified he had confronted Jones on three previous occasions and had shot at Jones' house in December 1998.

Audrey Jones, decedent's wife, testified that, on the afternoon of the shooting, "Courtney" came to the Jones' house, and Jones gave Courtney an automatic handgun. Jones appeared worried and left the house and returned several times. Mrs. Jones heard someone call her husband's name and then three gunshots. As she ran to the front of the house, she heard what sounded like a car accident. Mrs. Jones looked out and saw a red Jeep drive by and recognized [Harvey] in the front passenger seat. Mrs. Jones heard someone in the Jeep say, "I killed him. Motherfuckers, are you happy?" However, Mrs. Jones did not know which of the passengers made the statement. When the Jeep was gone, Mrs. Jones ran over to her husband where he lay in the street. Mrs. Jones saw nothing lying in the street near her husband. Jones said, "G shot me. Courtney has the gun." Mrs. Jones did not know which gun Jones was talking about, but she knew [Harvey] as "G." *Id*.

Tina Alcius testified that she was Courtney Buckingham's mother. After the shooting, at approximately 2 a.m., Alcius' daughter picked up Courtney. When Courtney came in, he had a gun which Jones had given to him. Alcius told Courtney to put the gun in a jewelry box, and she turned the gun in to police the next day.

Morton Alcius testified he saw [Harvey] walking and apparently drunk when a red Jeep he recognized as [Harvey]'s approached.  The Jeep pulled up, Jones turned around, and Alcius heard four shots.  Jones had a forty-ounce beer bottle in his hands.  Jones fell, and when Alcius got to him, the bottle was next to him, but there was no gun on the ground.  Courtney Davis also testified there was no gun next to Jones' body.

Paul Reddick testified he heard gunshots and saw [Harvey]'s Jeep hit a pole and drive away.  He realized someone was on the ground and saw that it was Jones.  Reddick saw a gun lying about twelve inches from Jones' hand.  Reddick did not mention the presence of the gun in his statement to police because they did not ask, and he did not think of it because, "when [he] came back to the body, the weapon was gone."  Nevertheless, Reddick testified the gun was near Jones' body as if he had been trying to pick it up before he hit the ground.

Vicki Hall, a trace evidence analyst at the Southwestern Institute of Forensic Science, testified she examined handwipings taken from Jones.  As a result of her examination, Hall concluded Jones had not fired a weapon, had not had his hands close to a discharging weapon, or that the weapon involved did not leave high amounts of residue.

*Harvey v. State*, No. 05-00-00610-CR (Tex. App.--Dallas 2001, pet ref'd), located in

*Ex parte Harvey*, Application No. 57,741-01, at 82-84.

Harvey was charged by indictment with murder.  *Ex parte Harvey,* Application

No. 57,741-01, at 88.  Upon his plea of not guilty, Harvey was tried by a jury and

ultimately convicted.  *Id*. at 92-95. The jury sentenced Harvey to ninety-nine years

imprisonment and a $10,000 fine.  *Id*. at 92.  On July 30, 2001, the Court of Appeals

for the Fifth District of Texas affirmed Harvey's conviction.  See *Harvey v. State*, No.

05-00-00610, 2001 WL 849749, *1 (Tex. App.--Dallas July 30, 2001, pet. ref'd).

The Texas Court of Criminal Appeals refused Harvey's petition for discretionary

review ("PDR") on May 29, 2002.  *Harvey v. State*, PDR No. 0123-02; Petition for

Writ of Habeas Corpus By A Person in State Custody ("Petition") at 3.

On May 7, 2003, Harvey filed his state habeas petition challenging his

conviction.  See generally *Ex parte Harvey*, Application No. 57,741-01, at 2.  The

Texas Court of Criminal Appeals denied the application without written order on the

findings of the trial court on March 3, 2004.  See *id*. (cover sheet).  On May 25,

2004, Harvey filed the instant petition for writ of habeas corpus in this court.  *See*

*generally* Petition.

## II.  ANALYSIS

### A.  Exhaustion of State Court Remedies

In his answer to the petition, respondent Doug Dretke, Director, Texas

Department of Criminal Justice, Correctional Institutions Division ("Dretke"), admits

that Harvey has satisfactorily exhausted all available state court remedies as required

by 28 U.S.C. § 2254(b) and (c).  Respondent [Dretke]'s Answer with Brief in

Support ("Answer") at 4.  Accordingly, Dretke does not seek dismissal of the

application for writ of habeas corpus on that basis.

B.  Standard of Review

Harvey's petition was filed May 25, 2004, subsequent to the April 24, 1996

effective date of the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA").  Therefore, the standards of review set forth in AEDPA apply to this

case.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Williams v. Cain*, 125 F.3d 269,

274 (5th Cir. 1997), *cert. denied*, 525 U.S. 859 (1998).  Consequently, the petitioner

may not obtain relief in this court with respect to any claim adjudicated on the merits

in the state court proceedings unless the adjudication of the claim:

> (1)  resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal
> law, as determined by the Supreme Court of the United
> States; or
>
> (2)  resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision may be "contrary to" Supreme Court precedent in two

ways.  First, the state court may arrive at a conclusion opposite to that reached by the

Supreme Court on a question of law.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Second, the state court may confront "facts that are materially indistinguishable from

a relevant Supreme Court precedent" and arrive at an opposite conclusion.  *Id*. (citing

*Green v. French*, 143 F.3d 865, 869-70 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090

(1999)).  To determine whether a state court decision involves an "unreasonable

application" of federal law, a federal habeas court's "inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. Further, all factual determinations made by a state court shall be presumed to be correct and such presumption can only be rebutted by clear and convincing evidence presented by the petitioner. 28 U.S.C. § 2254(e)(1).

### C. Harvey's Ground for Relief: Ineffective Assistance of Counsel

A criminal defendant has a constitutional right to the effective assistance of counsel. *See* U.S. CONST. amends. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984). An ineffective assistance claim is governed by the standards set forth in *Strickland*. 466 U.S. at 668. To establish ineffective assistance of counsel, a petitioner must show: (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*. at 687-88.

When applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or

sound trial strategy.  *Id.* at 688-89.  Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight.  *Id.* at 689.  "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  *Green v. Johnson,* 116 F.3d 1115, 1122 (5th Cir. 1997) (quoting *Garland v. Maggio,* 717 F.2d 199, 206 (5th Cir. 1983)).

To satisfy the prejudice prong of *Strickland*, Harvey must show that his counsel's errors were so serious as to deprive the defendant of a fair trial.  *Strickland,* 466 U.S. at 687.  Harvey must also show that as a result of trial counsel's unprofessional errors, there exists a reasonable probability that the result of the trial would have been different.  *Id.* at 694; see *Carter v. Johnson,* 131 F.3d 452, 463 (5th Cir. 1997) ("In evaluating claims of ineffective assistance during the guilt stage of the trial, the petitioner must show a 'reasonable probability' that the jury would have otherwise harbored a reasonable doubt concerning guilt."), *cert. denied,* 523 U.S. 1099 (1998); *Armstead v. Scott,* 37 F.3d 202, 207 (5th Cir. 1994) (finding that the showing of prejudice must be "rather appreciable" because a mere allegation of prejudice is not sufficient to satisfy the prejudice prong of *Strickland*), *cert. denied,* 514 U.S. 1071 (1995).  Since a convicted defendant must satisfy both prongs of the *Strickland* test, a failure to establish either deficient performance or prejudice makes it unnecessary to

examine the other prong. *Strickland*, 466 U.S. at 697; *Black v. Collins*, 962 F.2d 394, 401 (5th Cir.), *cert. denied*, 504 U.S. 992 (1992).

In this case, Harvey claims that his counsel: (1) failed to conduct a prompt and proper investigation; (2) failed to interview and subpoena eyewitnesses and the person who removed the gun from the scene; and (3) prevented him from presenting a complete and meaningful defense. *See* Petition at 3, 7; Memorandum of Law in Support of Kevin Dion Harvey's Application for the Writ of Habeas Corpus (2254) ("Harvey's Memorandum") at 5. Harvey's ineffective assistance claims have been reviewed on the merits under the *Strickland* standard and have been denied by the state courts. Accordingly, federal habeas relief may be granted only if the state court's decision was contrary to or involved an unreasonable application of *Strickland*, or if the state court's decision is based on an unreasonable determination of the facts in light of the evidence presented. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Haynes v. Cain*, 298 F.3d 375, 379-82 (5th Cir.), *cert. denied*, 537 U.S. 1072 (2002). Under this standard, the state court's application of *Strickland* must be shown to be not only erroneous, but also objectively unreasonable. *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). According to § 2254(e)(1), state court factual findings are presumed correct unless the habeas petitioner can establish by clear and convincing proof that they are incorrect. *See* 28 U.S.C. § 2254(e)(1). The court recognizes that ineffective assistance of counsel claims involve mixed questions of law and fact and that the

standards of § 2254(d)(1) apply to the ultimate determination of whether the state

court's findings that Harvey received effective assistance is due deference on federal

habeas review.  *Carter v. Collins*, 918 F.2d 1198, 1202 (5th Cir. 1990).  Nevertheless,

background fact findings made in the course of determining the issue of ineffective

assistance of counsel are subject to the presumption of correctness of § 2254(e)(1)

and may be rebutted only by clear and convincing proof.  See *Perillo v. Johnson*, 79

F.3d 441, 445-46 (5th Cir. 1996).

Harvey raised his ineffective assistance claim in his state habeas application.

Harvey's counsel contended, however, that he did investigate and interview witnesses.

Specifically, in his affidavit, Harvey's counsel stated:

> To address the issues raised by Mr. Harvey; first, I have no
> knowledge of anyone by the name of Kenny Ray Davis.
> My investigation never led me to him, nor was I ever given
> his name.
>
> As for Weldon Venters, my investigator David Wells made
> attempts to locate Mr. Venters.  Although to the best of
> my knowledge he never spoke personally with Mr. Wells,
> Mr. Venters expressed a concern about being charged as a
> party through other individuals and he further went on to
> state he was not going to testify.  My telephone number
> and address were left with individuals and places we
> thought Mr. Venters would be; he never contacted me.  I
> understand it was my job to find him, but we exhausted
> our sources.
>
> As for Corey Buckingham, I did speak with him.  In fact, I
> spoke with him with Mr. Harvey's mother.  Yes, Mr.
> Buckingham admitted to moving the gun; but he also
> stated that Mr. Harvey fired first and initiated the

> altercation.  The statement he [Harvey] has attached to the writ is completely contrary to what he told me.  I made the tactical decision to try to get the fact out a gun was found and moved through other witnesses, which I feel I did.  Because Mr. Buckingham's testimony as to what he saw would have been very damaging to Mr. Harvey's case, I chose not to call him.

*Ex parte Harvey*, Application No. 57,741-01, at 80-81.

The state trial court issued findings of fact rejecting Harvey's allegations and concluding that he failed to prove deficient performance on the part of counsel or that the result of his trial would have been different but for counsel's alleged deficiencies.  *Id*. at 76-79.  In particular, the state court found that Harvey's counsel was a trustworthy individual and that Harvey was represented by counsel who exercised all of the skill and expertise which one could reasonably expect of counsel. *Id*. at 77-78.  Based on this testimony, the state trial court made a credibility determination to believe the testimony of Harvey's counsel.

Harvey has failed to present clear and convincing proof to rebut the state court's factual findings.  The state court found the testimony of Harvey's counsel credible, and this credibility determination is entitled to a presumption of correctness.  See *Carter v. Johnson*, 131 F.3d at 463-64; *Carter v. Collins*, 918 F.2d at 1202.  As a result, this court will presume the facts contained in Harvey's counsel's affidavit -- and found credible by the state habeas court -- to be correct.  Accordingly, the court now turns to the issue of whether, under these circumstances, the state court's

ultimate findings that counsel rendered effective assistance was contrary to, or

involved an unreasonable application of, *Strickland* principles.

It is well established that a defense attorney has a duty to conduct a reasonable

amount of pretrial investigation.  See *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th

Cir. 1986), *cert. denied*, 479 U.S. 1030 (1987); *Nealy v. Cabana*, 764 F.2d 1173, 1177

(5th Cir. 1985).  The duty includes seeking out and interviewing potential witnesses.

*Lockhart*, 782 F.2d at 1282.  To succeed on a claim, however, the petitioner must

show that had counsel investigated the claim, he would have found witnesses to

support the defense, that such witnesses were available, and had counsel located and

called these witnesses, their testimony would have been favorable and they would

have been willing to testify on his behalf.  *Alexander v. McCotter*, 775 F.2d 595, 602

(5th Cir. 1985).  "(C)omplaints of uncalled witnesses are not favored, because the

presentation of testimonial evidence is a matter of trial strategy and because

allegations of what a witness would have testified are largely speculative."  *Boyd v.

Estelle*, 661 F.2d 388, 390 (5th Cir. 1981) (quoting *Buckelew v. United States*, 575 F.2d

515, 521 (5th Cir. 1978) (alteration in original); *United States v. El-Zoubi*, 993 F.2d

442 (5th Cir. 1993) (holding that a decision not to call certain witnesses during trial

was a matter of trial strategy).  Therefore, under *Strickland*, even where trial counsel

has failed to adequately investigate a case, a defendant must demonstrate that he has

been prejudiced by his counsel's failure.  See *Theriot v. Whitley*, 18 F.3d 311, 315 (5th Cir. 1994); *Nealy*, 764 F.2d at 1178-80.

Based on the facts set forth in the affidavit of Harvey's counsel, which carries a presumption of correctness, the court finds that counsel's investigation and the decision not to pursue Buckingham as a witness comported with *Strickland* standards. In particular, Harvey's counsel cannot be faulted for failing to investigate Davis, given that Harvey himself failed to supply him with Davis' name in a timely manner. Harvey's counsel also attempted to locate Venters to interview him; however, he was unable to accomplish this after thoroughly exhausting his resources.  Furthermore, after interviewing Buckingham, Harvey's counsel concluded that not only could Buckingham not provide credible testimony for Harvey on the theory of self-defense, but that Buckingham's testimony might actually benefit the state.  Under these circumstances, Harvey's counsel's failure to use the testimony of Buckingham constituted a rational decision, warranting a heavy measure of deference.  For these reasons, Harvey has failed to show that his counsel's actions were constitutionally deficient.

Additionally, Harvey's ineffective assistance claims should be denied because he has not satisfied the prejudice prong of the *Strickland* test.  The evidence adduced at trial conclusively established his guilt of murder.  Harvey did not deny shooting Jones.  Rather, Harvey argued only that he acted in self-defense when Jones aimed a

gun at him and shot him.  However, no gun was ever recovered from the scene of the

shooting.  Moreover, handwipings taken from Jones indicated that Jones had not fired

a gun, had not had his hands close to a discharging weapon, or that the weapon

involved did not leave high amounts of residue.  As a result, Harvey has not shown

that the result of the trial would have been different had his counsel acted differently.

See *Wilkerson v. Whitley*, 16 F.3d 64, 68 (5th Cir. 1994) (finding that if facts adduced

at trial point so overwhelmingly to the defendant's guilt that even the most

competent counsel would be unlikely to have obtained an acquittal, the defendant's

ineffective assistance of counsel claim must fail), *cert. denied*, 513 U.S. 1085 (1995).

In sum, after reviewing Harvey's claims and giving appropriate deference to the

state court's adjudication of these claims, the court cannot say that the state court's

application of the *Strickland* attorney-performance standard was erroneous or

objectively unreasonable.  See *Bell*, 535 U.S. at 698-99.

### III.  CONCLUSION

For the reasons discussed above, Harvey's petition for a writ of habeas corpus

is **DENIED**.

**SO ORDERED**.

June 28, 2005.

_____

A. JOE FISH

CHIEF JUDGE

- 13 -